IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSEPH E. WILLIAMS, ) | |
| ) | |
| Movant, ) | |
| ) | No. 1:16-cv-773 (LMB) |
| v. ) | Crim. No. 1:04-cr-160 (LMB) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. | |

## MEMORANDUM OPINION

Before the Court is Joseph E. Williams's ("Williams" or "movant") Second or Successive Motion to Correct Sentence under 28 U.S.C. § 2255 ("Motion to Vacate"), in which he argues that his life sentence should be vacated and corrected because he no longer qualifies as an armed career criminal in light of recent Supreme Court precedent.[1] For the reasons stated below, Williams's Motion to Vacate will be dismissed.

I.

In March 2003, Gail Collins, a resident of Alexandria, was found murdered by a gunshot to the head. The Alexandria Police Department, with the assistance of the Bureau of Alcohol, Tobacco, and Firearms, initiated an investigation into this murder, which linked Williams to the crime. On April 14, 2004, a federal grand jury in the Eastern District of Virginia returned a two-count indictment charging Williams with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The grand jury handed down a superseding indictment on May 26, 2004, and a second superseding indictment on July 15, 2004, which charged Williams with one count of

---

[1] Williams has been represented by counsel throughout this proceeding.

being a felon in possession of a firearm, and one count of being an unlawful drug user in possession of a firearm, in violation of § 922(g).

The case proceeded to a jury trial and on September 24, 2004, the jury found Williams guilty on both counts. The jury also answered several special interrogatories in which it unanimously found that the government had proven beyond a reasonable doubt that Williams killed Collins, that he killed her with malice, that the killing was premeditated and deliberate, and that he killed her during the commission or attempted commission of a robbery. See United States v. Williams, 445 F.3d 724, 729 (4th Cir. 2006).

Section 922(g) normally carries a maximum term of imprisonment of ten years, see 18 U.S.C. § 924(a)(2); however, the Armed Career Criminal Act ("ACCA") mandates a sentence of at least 15 years, and up to life imprisonment, for any defendant convicted of violating § 922(g) who has three prior convictions for a violent felony. 18 U.S.C. § 924(e)(1). Williams' Presentence Investigation Report ("PSIR") concluded that he was an armed career criminal under the ACCA because he had several prior adult felony convictions, including three convictions for Virginia common law robbery and three convictions for use or display of a firearm in commission of a felony in violation of Va. Code § 18.2-53.1.[2] This enhancement increased his criminal history to a category VI. Williams's offense level was 43 under the then-mandatory sentencing guidelines. At the sentencing hearing on December 17, 2004, the Court

---

[2] Specifically, the PSIR states that Williams was convicted on January 26, 1978 for a robbery of a discount store and an associated firearm violation which occurred in 1977. For these offenses, Williams was sentenced to seven years' imprisonment, six of which were related to the robbery and one of which was related to the firearm violation. Defendant was released on parole in January 1982, but he was again convicted on August 10, 1982 for two separate robberies "at gunpoint" and associated firearms violations which occurred on March 27, 1982 and April 10, 1982. For the 1982 robberies, he was sentenced as to each robbery to a total of 15 years' imprisonment, 12 of which were related to the robbery and three of which were related to the firearm violation. Defendant served 14 years of that sentence and was paroled in December 1996.

adopted the findings in the PSIR, merged the punishment on both convictions into a single count, and sentenced Williams to life imprisonment, which was then the mandatory sentence under the applicable guidelines.

Williams appealed his conviction and sentence. The Fourth Circuit affirmed his conviction, but remanded for resentencing solely because the initial sentence had been imposed before the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which rendered the sentencing guidelines advisory rather than mandatory. See Williams, 445 F.3d 724, 741. On remand, the Court again imposed a sentence of life imprisonment after finding:

> I'm fully aware that a life sentence is the most extreme sentence that the Court by itself can impose under these circumstances, and I certainly impose such sentences very, very seldomly and only in the most extreme cases; however, this in my view clearly is one of those extreme cases. In section 3553(a), among the first things the Court looks at is the criminal history of the defendant and the nature of the crime for which he stands convicted. This defendant has a very severe record of violent criminal behavior, going back to at least 1977. As the government points out, he has numerous robbery convictions in his past, most of them involving guns, a very deadly combination . . . . [After a three-year hiatus] this terrible round of new activity began . . . . and resulted in a very violent crime for which [defendant] has still in my view never accepted responsibility or shown any remorse . . . . This case is a case where I see a person with a chronic record of violent crime who has been unable to control that violence, who once described himself or was described as a youth as a very violent person. He cannot stay away from guns. So he is a person for whom I feel the public would always be in danger, and that is therefore a reason why a life sentence is appropriate. And the other factors in 3553(a) also clearly in my view go in that direction. So I am going to use the criminal history VI as reflected in the . . . pre-sentence report. That creates an offense level 43. The life sentence is what is called for by the guidelines. I think it is absolutely an appropriate sentence in this case, and the Court is therefore going to sentence the defendant as it did back on December 17 of 2004.

[Dkt. No. 124-1] at 13:24-15:23. Williams again appealed, and the Fourth Circuit affirmed. See United States v. Williams, 257 F. App'x 674 (4th Cir. 2007).

On April 14, 2009, Williams filed his first motion to vacate under 28 U.S.C. § 2255, which was dismissed. Williams appealed that decision, but the Fourth Circuit declined to issue a

certificate of appealability and dismissed the appeal. See United States v. Williams, 381 Fed. App'x 269 (4th Cir. 2010). On June 26, 2016, Williams filed the instant Motion to Vacate, arguing that his sentence should be vacated and he should be resentenced because he no longer qualifies as an armed career criminal in light of Johnson v. United States, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the "residual clause" of the ACCA was unconstitutionally vague, see id. at 2557-63.[3] Two days later, the Fourth Circuit authorized movant to file a second or successive motion to vacate under § 2255. On July 5, 2016, the action was stayed pursuant to Williams's request to await further guidance from the Fourth Circuit and the Supreme Court. On June 18, 2018, the stay was lifted pursuant to movant's request. The government filed an opposition to the Motion to Vacate, movant filed a reply, and the parties have filed supplemental briefs. The Motion to Vacate is ripe for review.

II.

Under the ACCA, a defendant qualifies as an armed career criminal if he has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). When Williams was sentenced, a crime qualified as a "violent felony" if the offense was "punishable by imprisonment for a term exceeding one year" and

> (i) ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another [the force clause]; or
>
> (ii) [was] burglary, arson, or extortion, involve[d] use of explosives [the enumerated crimes clause], or otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another [the residual clause].

---

[3] In Welch v. United States, 136 S. Ct. 1257, 1267 (2016), the Supreme Court held that Johnson applied retroactively to cases on collateral review.

4

Id. § 924(e)(2)(B). Although Johnson struck down the ACCA's residual clause, it held that the force clause and enumerated crimes clause remain valid. The parties agree that because none of Williams's prior convictions are listed in the enumerated crimes clause, his prior convictions may only qualify as violent felonies if they satisfy the requirements of the ACCA's force clause.

To determine whether a state crime qualifies as a violent felony under the ACCA's force clause, the Court must apply the "categorical approach," which focuses on the elements of the crime of conviction and not on the underlying facts. United States v. Reid, 861 F.3d 523, 527 (4th Cir. 2017). This approach requires considering whether the predicate crime at issue has as an element the "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The term "physical force" under the ACCA long has been defined as "violent force—that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 138 (2010) (emphasis in original).

### III.

The state crimes at issue in this case are Williams's three prior felony convictions for Virginia common law robbery and three convictions for use of a firearm in commission of a felony in violation of Va. Code § 18.2-53.1. When the government filed its first memorandum in opposition to Williams's Motion to Vacate in 2018, the governing precedent was United States v. Winston, 850 F.3d 677 (4th Cir. 2017), in which the Fourth Circuit held that Virginia common law robbery does not constitute a violent felony under the ACCA force clause because it "can be committed when a defendant uses only a 'slight' degree of force that need not harm a victim," id. at 685. In reaching this conclusion, the Fourth Circuit discussed a case where the defendant was convicted of Virginia common law robbery after he "approached the victim from behind, tapped her on the shoulder, and jerked her around by pulling her shoulder, took her purse, and ran." Id.

(citing Jones v. Commonwealth, 26 Va. App. 736 (1998) (internal quotation marks omitted)). The Fourth Circuit concluded that because convictions for Virginia common law robbery may be based on simple "physical jerking" where the "victim's resistance . . . was limited to the fact that she was 'forc[ed] . . . to turn and face' the defendant," such convictions do not necessarily reflect the use of violent force by the defendant, as required to satisfy the ACCA force clause. Id.

Constrained by this precedent, the government's initial 2018 memorandum argued that even if stand-alone Virginia common law robbery does not qualify as a violent felony under the ACCA force clause, Williams's convictions under Va. Code § 18.2-53.1 for use or display of a firearm in committing a felony do so qualify; however, in 2019, the government filed a supplemental memorandum arguing that the Supreme Court's decision in Stokeling v. United States, 139 S. Ct. 544 (2019) abrogated Winston such that Virginia common law robbery itself qualifies as a violent felony under the ACCA force clause. This argument is persuasive.

In Stokeling, the Supreme Court held that Florida common law robbery, which is very similar to Virginia common law robbery, satisfies the force clause of the ACCA; that robbery is "the quintessential ACCA-predicate crime"; and that "Congress made clear that the 'force' required for common-law robbery would be sufficient to justify an enhanced sentence under the" ACCA force clause. Id. at 551. The Supreme Court further held that the degree of force necessary to satisfy the ACCA force clause need not be "substantial," nor must there be "any particular degree of likelihood or probability that the force used will cause physical pain or injury"; instead, "only potentiality" is required. Id. at 553-54. Observing that in some cases of robbery only slight force is necessary to overcome a victim's physical resistance, the Supreme Court concluded that such force is "inherently 'violent'" because "robbery that must overpower a victim's will—even a feeble or weak-willed victim—necessarily involves a physical

confrontation and struggle. The altercation need not cause pain or injury or even be prolonged; it is the physical contest between the criminal and the victim that is itself 'capable of causing physical pain or injury.'" Id. at 553. Notably, the Supreme Court suggested that even "rudely push[ing]" a victim "for the purpose of diverting his attention and robbing him" would be sufficiently violent, id. at 550, which contradicts the Winston court's conclusion that "physical jerking" that forced the victim to "turn and face" the defendant was insufficiently violent.

Although the Fourth Circuit has not expressly reached the issue, it has strongly suggested that Winston was abrogated by Stokeling, such that Virginia common law robbery does satisfy the ACCA's force clause. See United States v. Rumley, 952 F.3d 538, 551 (4th Cir. 2020) ("Because we agree with the district court that [the defendant] has three qualifying ACCA predicates without counting his 1982 Virginia conviction for robbery, we do not reach the government's persuasive argument that Stokeling abrogated this court's decision in United States v. Winston, 850 F.3d 677, 679 (4th Cir. 2017)."). The Court agrees that the government's argument is persuasive, because the reasoning in Stokeling "specifically repudiate[s] the reasoning" on which the Winston panel relied, see Lux v. Judd, 651 F.3d 396, 402 (4th Cir. 2011).

This conclusion is bolstered by the Fourth Circuit's recent opinion United States v. Dinkins, 928 F.3d 349, 355 (4th Cir. 2019), in which the Fourth Circuit held that under Stokeling, North Carolina common law robbery, which "bears a strong similarity" to Virginia common law robbery, Winston, 850 F.3d at 685, constitutes a violent felony under the ACCA force clause. In so holding, the Fourth Circuit confirmed that its prior decision in United States v. Gardner, 823 F.3d 793 (4th Cir. 2016), which held that North Carolina common law robbery is not a violent felony under the force clause, had been abrogated by Stokeling. Of note, the

7

reasoning in Winston and Gardner was very similar, and the Winston court approvingly cited Gardner. Accordingly, the Fourth Circuit's opinions in Rumley and Dinkins support the conclusion that Winston has been abrogated, and that Virginia common law robbery must be evaluated anew under the standard articulated in Stokeling.

IV.

Under the reasoning in Stokeling, it is clear that Virginia common law robbery fits squarely within the parameters of the ACCA force clause. First, the elements of Virginia common law robbery mirror those of Florida robbery, which Stokeling found to be a violent felony under the ACCA force clause. Id. at 551. Compare Fla. Stat. § 812.13(1) (defining Florida common law robbery as "the taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear") with Winston, 850 F.3d at 683 (observing that Virginia common law robbery is defined as the "taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation"). Although Virginia's common law definition uses the term "intimidation," rather than "putting in fear," "the Virginia Court of Appeals has explained that the term [intimidation] is synonymous with striking fear in the victim." United States v. Parker, 716 F. App'x 190, 193 (4th Cir. 2018), cert. denied, 138 S. Ct. 2638, 201 L. Ed. 2d 1040 (2018) (quoting Jones, 26 Va. App. at 739.). Accordingly, Virginia common law robbery, like Florida robbery, may be completed by either violence or intimidation. Each alternative will be addressed in turn.

With respect to robbery by violence, "the critical factor under Stokeling in determining whether . . . [the] offense satisfies the ACCA's force clause is whether the offense requires that the offender 'physically over[come] the victim's resistance, 'however slight' that resistance

8

might be.'" Dinkins, 928 F.3d at 355 (quoting Stokeling, 139 S. Ct. at 550). Virginia common law robbery clearly satisfies this requirement. The Virginia Supreme Court has explained that to be convicted of Virginia common law robbery by violence, the violence deployed "need only be slight, for anything which calls out resistance is sufficient." Maxwell v. Commonwealth, 165 Va. 860, 864 (1936). As the Court of Appeals of Virginia recently explained, "for the snatching of property from another to amount to robbery, the perpetrator must employ more than the force necessary to remove the property from the person. Rather, there must be resistance by the victim that is overcome by the physical force of the offender." Pritchett v. Commonwealth, No. 0419-18-3, 2019 WL 1245922, at *3 (Va. Ct. App. Mar. 19, 2019) (internal quotation marks and citations omitted). Consistent with these descriptions, the Fourth Circuit has previously concluded that Virginia common law robbery is a categorical match with generic common law robbery because it requires the use of force sufficient to overcome a victim's resistance. See Parker, 716 F. App'x at 193 (concluding that "the amount of force required to sustain a Virginia robbery conviction matches the amount of force required to meet the definition of generic robbery that we have adopted"). Accordingly, because Virginia common law robbery by violence requires the use of force sufficient to overcome a victim's resistance, it satisfies the ACCA's force clause.

Although Virginia common law robbery may alternatively be completed by intimidation, which may not involve explicit use or threats of force, this does not disqualify the offense under the force clause. The Virginia Court of Appeals has explained that to constitute robbery by intimidation, the "fear" experienced by the victim must arise from the "design or conduct of the accused," rather than "the victim's temperament." Bivins v. Commonwealth, 19 Va. App. 750, 754 (1995). "[A] victim's experience of fear . . . does not constitute intimidation where a

9

defendant does not direct words or conduct at the victim to place the victim in fear of bodily harm." United States v. Goffigan, 216 F. Supp. 3d 672, 678 (E.D. Va. 2016). "In other words, intimidation must involve, at a minimum, an implied threat of bodily harm to the victim in order to sustain a conviction for robbery under Virginia law." Id. "[T]he slight or implicit nature of a threat does not render it nonviolent." United States v. Doctor, 842 F.3d 306, 310 (4th Cir. 2016).

The Fourth Circuit in Dinkins reached a similar conclusion with respect to North Carolina robbery, holding that although that state's robbery may be completed by putting a victim in fear, "the existence of this alternative means does not alter our analysis." Dinkins 928 F.3d at 357 n.6 (citing State v. Hammonds, 28 N.C. App. 583 (1976), where the North Carolina court stated that "[p]utting the victim in fear could be accomplished by means other than an actual 'threatened immediate use of force.'").[4] The Fourth Circuit has also held that other crimes that may be committed by intimidation, including federal carjacking, South Carolina strong-arm robbery, and federal bank robbery, constitute violent felonies or crimes of violence. See United States v. Evans, 848 F.3d 242, 246-48 (4th Cir. 2017); Doctor, 842 F.3d at 309-10; United States v. McNeal, 818 F.3d 141, 153-57 (4th Cir. 2016). Consistent with these authorities, Virginia robbery by intimidation constitutes a violent felony under the ACCA force clause.

None of movant's arguments to the contrary are persuasive. As an initial matter, most of the arguments in movant's initial brief have been mooted by subsequent case law, including Stokeling. Although movant has articulated a new argument in his latest memorandum, this argument is equally unpersuasive. Specifically, movant cites to dicta in three cases, the most

---

[4] Although the Supreme Court in Stokeling did not expressly address the portion of the Florida robbery statute criminalizing "putting [a victim] in fear," it is worth observing that like Virginia common law robbery, the Florida robbery statute "does not require proof that the defendant made express threats of violence." Von Young v. State, 266 So. 3d 1225, 1228 (Fla. Dist. Ct. App. 2019), reh'g denied (Mar. 28, 2019).

recent of which is over eighty years old, for the proposition that Virginia common law robbery may be committed by threats of something other than violent force:

> To constitute [robbery] there must be (1) violence, but it need only be slight, for anything which calls out resistance is sufficient; or, what will answer in place of actual violence, there must be such demonstrations as put the person robbed in fear. The demonstrations or fear must be of a physical nature, with the single exception that, if one parts with his goods through fear of a threatened charge of sodomy, the taking is robbery.

See Houston v. Commonwealth, 87 Va. 257, 264 (1890); Falden v. Commonwealth, 167 Va. 542, 546, (1937) (quoting Houston); Fleming v. Commonwealth, 170 Va. 636, 639 (1938) (quoting Houston). Williams argues that based on these passing references to the theoretical possibility that Virginia common law robbery could, as of 1938, be committed through a "threatened charge of sodomy," the Court must conclude that that offense is not a violent felony under the ACCA.[5] This argument does not withstand scrutiny.

As an initial matter, none of the cited cases actually involved allegations of robbery through a threatened charge of sodomy. Houston involved a robbery which included the use of firearms and "striking and beating" the victim, Falden involved a conspiracy to rob a United States mail truck, and Fleming involved a physical assault. Accordingly, the passing reference to the sodomy issue in those cases is mere dicta. Moreover, none of the three opinions devotes any effort to analyzing the sodomy issue; instead, all three opinions simply mention it without any further explanation or context. Notably, the Court is unaware of any Virginia case, let alone a

---

[5] Under the categorical approach, the Court must ignore the facts in the PSIR which demonstrate that Williams's prior convictions were not for robbery achieved through a threatened charge of sodomy, but rather for robbing various stores at gunpoint. This highlights the problems inherent in the "Alice in Wonderland path known as the 'categorical approach,'" United States v. Battle, 927 F.3d 160, 163 n.2 (4th Cir. 2019), which requires the Court to engage in "an exhaustive review of state law [to] search for a non-violent needle in a haystack or conjure up some hypothetical situation to demonstrate that the predicate state crime just might conceivably reach some presumably less culpable behavior," Doctor, 842 F.3d at 313 (Wilkinson, J., concurring). This leads to a regime that is often "frankly and explicitly at odds with reality." Id. at 314.

11

recent case, in which a defendant has been prosecuted for robbery committed via a threatened charge of sodomy.[6]

Moreover, in 1975, the General Assembly of Virginia enacted Va. Code § 18.2-58, which describes the punishment for various means of committing common law robbery:

> If any person commit robbery by partial strangulation, or suffocation, or by striking or beating, or by other violence to the person, or by assault or otherwise putting a person in fear of serious bodily harm, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony and shall be punished by confinement in a state correctional facility for life or any term not less than five years.

Id. Missing from that statute is any reference to robbery committed through threat of a charge of sodomy. This omission is particularly notable given that under Va. Code § 18.2-16, "[a] common-law offense, for which punishment is prescribed by statute, shall be punished only in the mode so prescribed." Id. "Crimes . . . consist of those 'acts to which the law affixes . . . punishment.'" Apprendi v. New Jersey, 530 U.S. 466, 510 (2000) (Thomas, J., concurring) (quoting 1 J. Bishop, Law of Criminal Procedure 50, 51 (2d ed. 1872)). Because the Virginia legislature has not affixed a punishment to robbery committed through a threatened charge of sodomy, it stands to reason that that conduct is no longer considered a robbery crime. See Robbery, Va. Prac. Criminal Offenses & Defenses R22 ("In its present form the statute [§ 18.2-58] appears to permit a robbery conviction only if one of the forms of violence or intimidation specified therein is imposed upon the victim."). Of course, this is not to say that obtaining a

---

[6] Virginia is not the only state whose early case law includes references to this sodomy exception. For example, in 1899, the Florida Supreme Court observed that "[t]he terror which would lead the person robbed to apprehend an injury to his character was never deemed sufficient to support an indictment for robbery, except in the particular instance of its being excited by means of insinuations against, or threats to destroy, the character by accusations of sodomitical practices." Simmons v. State, 41 Fla. 316, 319 (1899). As in Virginia, this alternative form of robbery appears to have been abandoned in Florida, and was not discussed in any respect by the Supreme Court in Stokeling.

12

victim's goods through a threatened charge of sodomy is no longer considered a criminal act in Virginia, but today it would likely be considered extortion, instead of robbery.[7] See id. at n.39 ("At common law obtaining personalty by a threat to expose the victim as a sodomite . . . was robbery . . . . Such conduct is now more properly charged as extortion under Va. Code Ann. § 18.2-59.").[8]

For all these reasons, the Court concludes that Virginia common law robbery qualifies as a violent felony under the ACCA's force clause.[9] Because Williams has three prior convictions

---

[7] Scholars have explained how a similar evolution occurred in many states:

> We have seen, in the discussion of robbery, that to obtain another's property by means of a threat of immediate bodily harm to the victim (or to someone in his company) is robbery; and robbery is held to embrace also a threat to destroy the victim's home or a threat to accuse him of sodomy. That was, however, as far as robbery by threats went—doubtless because the severe penalty for robbery, long a capital offense, restrained the courts from expanding robbery to include the acquisition of property by means of other effective threats—such as a threat to inflict future rather than immediate bodily harm, or to destroy the victim's property other than his house, or to accuse him of some crime other than sodomy, or to expose his failings or secrets or otherwise to damage his good name or business reputation. To fill this vacuum practically all states have enacted statutes creating what is in effect a new crime—in some states called statutory extortion, in others blackmail, and generally carrying a penalty less severe than for robbery.

3 Wayne R. LaFave, Substantive Criminal Law § 20.4(a) (3d ed. & 2019 Update).

[8] Va. Code § 18.2-59 provides, in relevant part: "[a]ny person who (i) threatens injury to the character, person, or property of another person, [or] (ii) accuses him of any offense . . . and thereby extorts money, property, or pecuniary benefit or any note, bond, or other evidence of debt from him or any other person, is guilty of a Class 5 felony."

[9] Because Virginia common law robbery constitutes a violent felony under the force clause, the Court need not address the government's alternative argument that convictions under § 18.2-53.1 constitute violent felonies under the ACCA force clause; however, the Court observes that at least two district courts in the Fourth Circuit have issued persuasive opinions adopting this conclusion. See Robinson v. United States, No. 7:91-cr-36, 2018 WL 2027092, at *4-*6 (W.D. Va. May 1, 2018); Pannell v. United States, No. 7:02-cr-2, 2018 WL 542978, at *6-*8 (W.D. Va. Jan. 24, 2018), vacated and remanded on other grounds, 740 F. App'x 804 (4th Cir. 2018).

13

for Virginia common law robbery, and there is no dispute that each occurred on a different day, the application of the career offender enhancement was appropriate.

## V. CONCLUSION

For the foregoing reasons, Williams's Motion to Vacate will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 27th day of May, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge