IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSEPH E. WILLIAMS, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | 1:16-cv-773 (LMB) |
| ) | 1:04-cr-160 (LMB) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

<u>MEMORANDUM OPINION</u>

On May 27, 2020, the Court dismissed movant Joseph E. Williams' ("Williams" or "movant") Second or Successive Motion to Correct Sentence under 28 U.S.C. § 2255 ("Motion to Vacate") [Dkt. No. 116], in which he argued that his life sentence should be vacated and corrected because he no longer qualified as an armed career criminal in light of recent Supreme Court precedent. The United States Court of Appeals for the Fourth Circuit has vacated that decision and remanded Williams' Motion to Vacate with instructions that the Court should consider whether Williams' three past Virginia firearms convictions under Va. Code § 18.2-53.1 ("§ 18.2-53.1") constitute violent felonies that would provide an independent basis for enhancing his sentence under the Armed Career Criminal Act ("ACCA"). [Dkt. No. 137] at 13. Having examined Williams' convictions under § 18.2-53.1 and reviewed the parties' memoranda, for the reasons that follow, the Court will dismiss Williams' Motion to Vacate.

I. BACKGROUND

**A. Factual Background**

On March 21, 2003, Gail Collins, a 49-year-old resident of Alexandria, Virginia, was found murdered in her apartment with a gunshot wound to her head. The Alexandria Police Department ("APD") conducted an investigation and, after finding that immediately after Ms. Collins' death Williams both ordered the withdrawal of money from Ms. Collins' bank accounts and sold compact discs belonging to Ms. Collins to a music store, the APD arrested Williams. Alexandria authorities did not prosecute Williams but turned him over for federal prosecution.

On April 14, 2004, a federal grand jury in the Eastern District of Virginia returned a two-count indictment charging Williams with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The grand jury handed down a superseding indictment on May 26, 2004 and a second superseding indictment on July 15, 2004, which charged Williams with one count of being a felon in possession of a firearm and one count of being an unlawful drug user in possession of a firearm in violation of § 922(g). The case proceeded to a jury trial and on September 24, 2004, the jury found Williams guilty of both charges. The jury also answered several special interrogatories in which it unanimously found that the government had proven beyond a reasonable doubt that Williams killed Collins, that he killed her with malice, that the killing was premeditated and deliberate, and that he killed her during the commission or attempted commission of a robbery. See United States v. Williams, 445 F.3d 724, 729 (4th Cir. 2006).

At his sentencing hearing on December 17, 2004, the Court adopted the findings in Williams' Presentence Investigation Report ("PSIR"), which concluded that Williams was an

2

armed career criminal under the ACCA because he had several prior adult felony convictions, including three convictions for Virginia common-law robbery and three convictions for use or display of a firearm in commission of those robberies, in violation of Va. Code § 18.2-53.1.[1] Although a conviction under § 922(g) normally carries a maximum term of ten years' imprisonment, see 18 U.S.C. § 924(a)(2), the ACCA mandates that any defendant convicted of violating § 922(g) who has three prior convictions for a violent felony receive a sentence enhancement of at least 15 years and up to life imprisonment. 18 U.S.C. § 924(e)(1). As a result, the Court merged the punishment on both convictions into a single count and sentenced Williams to life imprisonment, which was then the mandatory sentence under the applicable guidelines.

### B. Procedural History

Williams appealed his conviction and sentence. The Fourth Circuit affirmed his conviction but remanded for resentencing solely because the initial sentence had been imposed before the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which rendered the U.S. Sentencing Guidelines advisory. See Williams, 445 F.3d at 741. On remand, the Court again imposed a sentence of life imprisonment after finding that, in considering the § 3353(a) factors, Williams "has a severe record of violent criminal behavior," including

---

[1] According to the PSIR, Williams was convicted on January 26, 1978 for a 1977 robbery of a discount store and use of a firearm in the commission of the robbery. For these offenses, Williams was sentenced to seven years' imprisonment, six of which were related to the robbery and one of which was related to the firearm violation. He was released on parole in January 1982 but was again convicted on August 10, 1982 for two separate robberies "at gunpoint" and associated firearms violations which occurred on March 27, 1982 and April 10, 1982. For the 1982 robberies, he was sentenced as to each robbery to a total of 15 years' imprisonment, 12 of which were related to the robbery and three of which were related to the firearm violation. Defendant served 14 years of that sentence and was paroled in December 1996.

"numerous robbery convictions in his past, most of them involving guns," and has been "unable to control that violence" or "stay away from guns." [Dkt. No. 124-1] at 13:24-15:23. Williams again appealed, and the Fourth Circuit affirmed. See United States v. Williams, 257 F. App'x 674 (4th Cir. 2007).

On June 26, 2016, Williams filed a Motion to Vacate, arguing that he should be resentenced because he no longer qualifies as an armed career criminal in light of Johnson v. United States, 576 U.S. 591 (2015), in which the Supreme Court held that the "residual clause" of the ACCA was unconstitutionally vague, see id. at 2257-63.[2] [Dkt. No. 116]. Because Williams previously filed a Motion to Vacate, which was denied in 2009, the Fourth Circuit authorized him to file the second or successive motion to vacate under § 2255. [Dkt. No. 117].

On May 27, 2020, the Court issued a Memorandum Opinion dismissing Williams' Motion to Vacate finding that his convictions for robbery under Va. Code § 18.2-58 constituted "violent crimes" under the elements clause of the ACCA, and as such the Court concluded that it "need not address the government's alternative arguments that convictions under § 18.2-53.1 constitute violent felonies under the ACCA [elements] clause." [Dkt. No. 129] at 13 n.9. Movant appealed this Court's ruling. In the interim, the Fourth Circuit certified the following question to the Virginia Supreme Court: "Under Virginia common law, can an individual be convicted of robbery by means of threatening to accuse the victim of having committed sodomy?" United States v. White, 987 F.3d 340, 341 (4th Cir. 2021).

---

[2] In Welch v. United States, 136 S. Ct. 1257, 1267 (2016), the Supreme Court held that Johnson applied retroactively to cases on collateral review.

4

The Virginia Supreme Court found that under Virginia common law, a defendant may be convicted of robbery "if the accusation of 'sodomy' involves a crime against nature under extant criminal law." White v. United States, 863 S.E. 2d 483, 483 (2021). The Fourth Circuit then concluded that such a theory of robbery falls outside the elements clause of the ACCA and thereby determined that a conviction for common-law robbery in Virginia could not qualify as a conviction for a crime of violence. United States v. White, 24 F.4th 378, 382 (4th Cir. 2022).

In light of White, the Fourth Circuit vacated this Court's decision, finding that Williams' past robbery convictions did not constitute "violent offenses" because the version of § 18.2-58 in effect at the time of movant's convictions encompassed the sodomy-threat theory. [Dkt. No. 136] at 13. The Fourth Circuit remanded Williams' § 2255 Motion to this Court with instructions to consider whether his three firearm convictions under § 18.2-53.1 "satisfy § 924(e)'s elements clause," and if they do, "they would provide an independent basis for applying the ACCA sentence enhancement." Id. The parties have fully briefed the issue, rendering the Motion to Vacate ripe for review.

## II. DISCUSSION

Williams argues that his prior convictions under § 18.2-53.1 cannot satisfy the elements clause of the ACCA because § 18.2-53.1 does not "categorically require (1) a mens rea greater than recklessness; (2) use of force against a person, as the use of a firearm against property would suffice; or (3) threatened force against another person, as a threat of self-harm during the course of a robbery would satisfy the elements of the offense." [Dkt. No. 139] at 2. The government opposes Williams' Motion by arguing that because the use or display of a firearm during a specified felony is a compound offense, requiring that the government prove the

5

elements of both the underlying felony, in Williams' case, robbery, and the use of a firearm in the commission of the robbery, Williams' § 18.2-53.1 convictions "eliminate the problem posed by the sodomy-threat theory in satisfying the elements clause" because for each conviction there had to be evidence beyond a reasonable doubt that Williams' either "use[d], attempted [to] use, or threatened use of physical force." [Dkt. No. 142] at 2.

### A. The Armed Career Criminal Act

Under the ACCA, a defendant qualifies as an armed career criminal if he has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). When Williams was sentenced, a crime qualified as a "violent felony" if the offense was "punishable by imprisonment for a term exceeding one year" and

> (i) ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another [the "elements clause"]; or
>
> (ii) [was] burglary, arson, or extortion, involve[d] use of explosives [the "enumerated crimes clause"], or otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another [the "residual clause"].

Id. § 924(e)(2)(B). Although Johnson invalidated the ACCA's residual clause, it left undisturbed the elements and enumerated crimes clauses. 576 U.S. at 606. Because none of Williams' prior convictions are listed in the enumerated crimes clause, his prior convictions may only qualify as violent felonies if they satisfy the requirements of the ACCA's elements clause.

To determine whether a state crime qualifies as a violent felony under the ACCA's elements clause, a court must apply the "categorical approach," which focuses on the elements of the crime of conviction and not on the facts underlying the conviction. United States v. Reid, 861 F.3d 523, 527 (4th Cir. 2017). This approach requires consideration of whether an offense

6

has "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The term "physical force" under the ACCA long has been defined as "violent force—that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 138 (2010) (emphasis in original). Moreover, the Supreme Court has interpreted the elements clause to require that the criminal offense contain more than "a mens rea of recklessness." United States v. Borden, 141 S. Ct. 1817, 1833 (2021).[3]

### B. Use of a Firearm in the Commission of a Robbery

To identify the elements of a state offense and the minimum conduct needed to prove them, courts "look to state law" and "the interpretation of [the] offense articulated by the state's courts." United States v. Dinkins, 928 F.3d 349, 353 (4th Cir. 2019). At the time of Williams' prior convictions, § 18.2-53.1 made it unlawful to "use or attempt to use" a firearm "or display such weapon in a threatening manner while committing or attempting to commit murder, rape, robbery, burglary or abduction." Ansell v. Commonwealth, 250 S.E. 2d 760, 761 (1979) (quoting Va. Code § 18.2-53.1).[4] Additionally, under Virginia law, a firearm is "used" if the defendant "employs it" during and "in furtherance of [the underlying] felony." Yarborough v.

---

[3] Although a plurality opinion, five justices have confirmed that a criminal offense is not a violent felony under ACCA's elements clause if it requires "only a mens rea of recklessness." United States v. Borden, 141 S. Ct. 1817, 1821-22, 1825 (2021). Four justices reached that result because they determined that "the 'use' phrase, as modified by the 'against' phrase . . . excludes reckless conduct." Id. at 1829 n.6. Justice Thomas concurred in the judgment, but wrote separately to explain that, in his view, the "'use' phrase alone accomplish[ed] that result." Id. at 1835 (Thomas, J., concurring).

[4] Although § 18.2-53.1 has been amended several times since Williams' convictions, those amendments are not material to Williams' case.

7

Commonwealth, 441 S.E. 2d 342, 344 (Va. 1994); Rhodes v. Commonwealth, 2023 WL 6394042, at *8 (Va. Ct. App. Oct. 3, 2023) (interpreting § 18.2-53.1 to require proving "using a firearm in furtherance of a felony"). A firearm is "displayed" if the defendant "manifests it to any of the victim's senses." Rowland v. Commonwealth, 707 S.E. 2d 331, 334 (Va. 2011).

Williams' § 18.2-53.1 convictions fall squarely within the elements clause of the ACCA because, under Virginia case law, the minimum conduct necessary to support a conviction for the use, attempted use, or display of a firearm in a threatening manner while committing a robbery "involves violent force or the threat of violent force" against another person. Pannell v. United States, 2018 WL 542978, at *7 (W.D. Va. Jan. 24, 2018), vacated and remanded on other grounds, 740 F. App'x 804 (4th Cir. 2018). The Supreme Court of Virginia has emphasized that "the Commonwealth must prove that the accused actually had a firearm in his possession," Yarborough, 441 S.E. at 344, and that the defendant "actively employ[ed] or threaten[ed] to use a firearm[,] with the concomitant infliction or threat of violent physical force[,] in order for a conviction under § 18.2-53.1 to stand." Pannell, 2018 WL 542978, at *7 (citing Rowland, 707 S.E. 2d at 334 (finding that because the predicate felony had been completed before anyone actually saw the gun, the defendant had not used or displayed it while committing the predicate felony)). In discussing the "display" element, Virginia courts have emphasized that, at a minimum, the defendant must "display his firearm to promise punishment, reprisal, or other distress to the victim," and the victim must be made aware that the defendant has a firearm. Dezfuli v. Commonwealth, 707 S.E. 2d 1, 5 (Va. Ct. App. 2011); Cox v. Commonwealth, 240 S.E. 2d 524, 526 (Va. 1978) (explaining that a firearm "by its nature and design" is "capable of inflicting death or great bodily injury"); Jones v. Commonwealth, 235 S.E. 2d 313, 315 (Va.

1977) ("The 'gist' of Code § 18.2-53.1 is the use of a firearm in situations where it is likely that weapons may be used to injure victims . . . or bystanders.")).

Williams does not contest that § 18.2-53.1 includes "as an element the use, attempted use, or threatened use of" force; however, he argues that because § 18.2-53.1 punishes any "use" of a firearm during a robbery and does not expressly indicate that physical force must be directed against another person, it falls outside the elements clause of the ACCA. [Dkt. No. 139] at 2. Williams does not cite to a single Virginia case that supports his theory. For example, he points to Smith v. United States to argue that even using a firearm to scratch one's own head may qualify as "use" such that § 18.2-53.1 may seemingly punish less than violent force; however, Smith actually contradicts Williams' theory, by explaining that when interpreting the elements of 18 U.S.C. § 924(c)(1), which require the imposition of specified penalties if a defendant used a firearm "during and in relation to . . . [a] drug trafficking crime[,]" the Supreme Court clarified that a "firearm that served to relieve an itch is not enough" where a statute required that "the use facilitates or furthers the [] crime." 508 U.S. 223, 232 (1993). The Virginia Court of Appeals has similarly found that for a successful conviction under § 18.2-53.1, the use of the firearm must be during and "in furtherance of" the underlying felony, thereby requiring that the "concomitant infliction or threat of physical force" must "facilitate[] or further[] the [] crime." Rhodes, 2023 WL 6394042, at *8; Pannell, 2018 WL 542978, at *7.

Williams also cites to Breeden v. Commonwealth to argue that Virginia courts have upheld a conviction under § 18.2-53.1 based solely on the defendant's threat to kill himself with a firearm. 596 S.E. 2d 563 (Va. Ct. App. 2004). This claim cherry-picks the facts and reasoning in that case. Faced with a defendant who had "displayed a firearm to accomplish [] rape," the

9

court in Breeden upheld a conviction under § 18.2-53.1 because, although referencing that the defendant had threatened to kill himself, "the record reveal[ed]" that the defendant "was [also] holding [a] gun the entire time," that after the victim refused to have sex with the defendant "he picked up a shotgun in his free hand . . . [and] kicked [the victim], forcing her to climb the stairs to the bedroom," and the defendant "put the pistol on a shelf above the bed within his reach while he raped her." Id. at 569. The defendant's conviction clearly did not stand on his threat to kill himself alone, as Williams suggests; rather, the court looked at all "this evidence," which included displaying the firearm in a threatening manner towards the victim "to promise punishment, reprisal, or other distress to the victim" while committing the rape. Id.; Dezfuli, 707 S.E. 2d at 5.

Moreover, both Virginia courts and the Fourth Circuit have reinforced the indivisibility of § 18.2-53.1, by requiring that the Commonwealth must prove both a predicate offense, in this case, robbery, and the requisite elements addressing the use or display of a firearm. See Bundy v. Commonwealth, 259 S.E. 2d 826, 827-28 (Va. 1979) (reversing a conviction under § 18.2-53.1 because the use of a firearm "while committing a felony" was insufficient to satisfy § 18.2-53.1 without proving the elements of the underlying murder offense); Holman v. Commonwealth, 885 S.E. 2d 493, 501 (Va. Ct. App. 2023) (vacating § 18.2-53.1 conviction because "the record affirmatively shows that a malicious wounding—a necessary element of Code § 18.2-53.1—did not exist"); United States v. Roof, 10 F.4th 314, 402 (4th Cir. 2021) (in applying the categorical approach, "we do not view each element of the crime in isolation"). Although the Fourth Circuit has determined after White, that Virginia common-law robbery alone cannot qualify as a predicate offense, a conviction under § 18.2-53.1 for use or display of a

10

firearm during a robbery categorically qualifies as a violent felony under the ACCA because the firearm elements of § 18.2-53.1 when read in conjunction with the elements of the underlying felony, require the Commonwealth to prove that a defendant used a firearm or attempted to use a firearm in a threatening manner against another person and had a mens rea greater than recklessness, as required by Borden.

Common-law robbery is defined as "the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." Durham v. Commonwealth, 198 S.E. 2d 603, 605 (Va. 1973) (quoting Jones v. Commonwealth, 1 S.E. 2d 300, 301 (Va. 1939)). To sustain a conviction under § 18.2-53.1, the force or intimidation used during the robbery "must be directed at the person of the victim," and not directed towards oneself or just the victim's property as Williams argues. Commonwealth v. Anderson, 683 S.E. 2d 536, 539 (Va. 2009). Moreover, the force or intimidation used to accomplish the robbery, must pose an immediate threat of harm and must "precede or be concomitant with the taking." Mason v. Commonwealth, 105 S.E. 2d 149, 151 (Va. 1958). Because Virginia courts and the Fourth Circuit "do not view each element" of § 18.2-53.1 "in isolation," any claim that the use or display of a firearm during a robbery requires proving less than violent force against another person fails. Roof, 10 F.4th at 402.

Moreover, Virginia courts and the Fourth Circuit have similarly foreclosed defendant's claim that § 18.2-53.1 does not require proof of a mens rea greater than recklessness because "the intentional taking of property, by means of violence or intimidation sufficient to overcome a

11

person's resistance, must entail more than accidental, negligent, or reckless conduct."[5] United States v. Doctor, 842 F.3d 306, 311 (4th Cir. 2016) (citing Carter v. United States, 530 U.S. 255, 268 (2000)); Bivens v. Commonwealth, 454 S.E. 2d 741, 752-53 (1995) (explaining that robbery requires that the Commonwealth show "violence" through "physical touching or violation of the victim's person" that "cannot result merely from the force associated with the taking" or "intimidation" through "willfully [] tak[ing], or attempt to take, by putting in fear of bodily harm"). In this way, the use of a firearm in the commission of a robbery necessarily requires a mens rea of more than recklessness because without proof of "more than accidental, negligent, or reckless conduct" in using, attempting to use, or displaying a firearm, the Commonwealth could not prove a requisite element of common-law robbery. Williams' convictions for these separate violations of § 18.2-53.1, all of which were affirmed on appeal, clearly establish that his sentence was properly enhanced under the ACCA.

## III. CONCLUSION

Because using, attempting to use, or displaying a firearm during the commission of a Virginia common-law robbery necessarily includes "as an element, the use, attempted use, or threatened use of physical force against the person of another" as well as a mens rea of more than recklessness, as required under the ACCA and Borden, Williams is not entitled to a sentence

---

[5] This Court's conclusion aligns with district courts in the Fourth Circuit that have found § 18.2-53.1 satisfies the ACCA's elements clause. See United States v. Al-Muwwakkil, 2021 WL 1912373 (E.D. Va. May 12, 2021); Robinson v. United States, 2018 WL 2027092, at *4-6 (W.D. Va. May 1, 2018); Pannell v. United States, 2018 WL 542978, at *6-8 (W.D. Va. Jan. 24, 2018), vacated and remanded on other grounds, 740 F. App'x 804 (4th Cir. 2018). Although these cases were decided before the Supreme Court's decision in Borden, and as such, those courts did not reach the question of whether § 18.2-53.1 requires that the Commonwealth prove a mens rea of more than recklessness, their analysis remains relevant to Williams' arguments.

reduction. For these reasons, his Motion to Vacate [Dkt. No. 116] will be dismissed by an Order to be issued with this Memorandum Opinion.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 16th day of October, 2023.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge